UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                  :

DONALD M. WILLIAMS,              :

                 Plaintiff,         :

        -against-            :        REPORT AND
                                  :        RECOMMENDATION
                                  :        06 Civ. 2495 (SCR)(MDF)

JO ANNE B. BARNHART,          :
Commissioner of Social Security,     :

                 Defendant.        :

------------------------------------------------------------X

TO:    THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.

Plaintiff Donald Williams brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of the final decision of the Commissioner of Social Security (the

"Commissioner"), finding that he was not entitled to disability insurance benefits or

Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Currently

pending before the Court are the Commissioner's motion and Plaintiff's cross-motion for

judgment on the pleadings under Rule 12(c). Docket Nos. 5, 12. Because I find that the

Commissioner's decision regarding Plaintiff's claim is supported by substantial evidence, I

respectfully recommend that Your Honor grant the Commissioner's motion for judgment on the

pleadings, deny Plaintiff's cross-motion, and dismiss the case.

I.    **BACKGROUND**

    A.    **Procedural History**

Plaintiff last worked on a permanent basis as a counselor and supervisor for the New

York State Office of Children and Family Services. Administrative Record ("AR") 50, 57-58,

158, 161-62.  Plaintiff reports, inconsistently, that he stopped working in August, 2000, or on

July 15, 2001, and that he received unemployment benefits through September 7, 2002.  *Id.* at 50,

57-58.  On October 15, 2002, Plaintiff applied concurrently for disability insurance benefits and

SSI as a disabled individual.  *Id.* 44-46.  Plaintiff claimed injury to his right leg as the result of a

stab wound.  *Id.* 57.  His application was denied on initial administrative review, *id.* 20-27, and

Plaintiff thereafter requested a hearing, which was held before Administrative Law Judge

("ALJ") James B. Reap on August 26, 2004.  *Id.* 28, 150.  Following the hearing, the ALJ issued

a decision, on January 28, 2005, finding that Plaintiff was not disabled within the meaning of the

Act and denying his claim.  *Id.* 10-19.  Finally, on November 7, 2005, Plaintiff's request for

review of the ALJ's decision was denied by the Appeals Council.  As such, the ALJ's decision

became the final decision of the Commissioner.  *Id.* 2-4.

On March 30, 2006, Plaintiff commenced this action, alleging that the ALJ erroneously

denied his application for disability benefits.  Compl. ¶ 9.  After filing an answer, the

Commissioner moved for judgment on the pleadings on the ground that the ALJ's decision was

supported by substantial evidence.  Plaintiff then made an application for the Court to request

counsel on his behalf.  *See* Docket Nos. 7, 11.  However, at a conference held before me on April

3, 2007, Plaintiff declined the opportunity to adjourn this proceeding to allow for time to attempt

to find volunteer counsel.[1]  Plaintiff continued *pro se* in this action, and, on May 18, 2007, cross-

_____

[1] Plaintiff was informed at this conference that unlike a criminal defendant, he is not
entitled to appointed counsel as a civil litigant. *See* 28 U.S.C. § 1915(e)(1) ("The court may
request an attorney to represent any person unable to afford counsel.").  In appropriate cases, the
Court can submit a civil litigant's case to a panel of volunteer attorneys, who each decide
individually whether to represent the litigant *pro bono. See Mallard v. United States District
Court*, 490 U.S. 296 (1989).  There is no guarantee, however, that counsel will actually
volunteer.  Nevertheless, to the extent Plaintiff has not already voluntarily withdrawn his

moved for judgment on the pleadings.  Plaintiff attaches to his moving papers a number of his

son's school records, and asks the Court to consider these records in connection with his claim.

### B.    Medical Evidence

On October 4, 2002, Plaintiff was stabbed in his right leg and was taken by ambulance to

Norwalk Hospital, where an examination of his wound revealed an incision of approximately two

and one-half centimeters, lateral to the bone, approximately ten centimeters from the bottom of

his knee.  AR 106.  An "active visible pumping vessel" was also revealed, but, after pressure was

reapplied to the wound following the examination, blood loss was controlled.  *Id.* 106-07.

Plaintiff was still able to flex and extend his right foot.  *Id.*

On October 5, 2002, Dr. Bartholomew Pasternak performed surgery on Plaintiff's lower

right leg to tie off multiple injured peroneal veins and a divided peroneal artery, as well as to

repair Plaintiff's partially injured posterior tibial artery.  *Id.* 102-03, 112-13.  Despite an attempt

to close the wound during this procedure, progressive swelling of Plaintiff's leg required removal

of cutaneous sutures and the wound was left open.  *Id.*  Two days later, Dr. Pasternak performed

another surgery that partially closed the wound.  *Id.* 104-05, 112.  Due to conflicts between

Plaintiff and his medical staff at this time, Plaintiff's care was transferred to Dr. Neil Floch, who

became responsible for Plaintiff's care until he was discharged on October 11, 2002.  *Id.* 112-13,

120.

On November 12, 2002, Plaintiff first returned for an examination with Dr. Floch, who

indicated at that time that Plaintiff was "doing quite well."  *Id.* 133.  Dr. Floch further noted that

---

application for the Court to request counsel, I recommend that the application be denied as moot
in light of my finding that the Commissioner's decision regarding Plaintiff's claim is supported
by substantial evidence.

Plaintiff was still on crutches and had not seen a doctor since his discharge from the hospital. Because Dr. Floch observed that Plaintiff was afraid to put weight on his right foot and had developed a contracture, he prescribed physical therapy and instructed Plaintiff to stop using crutches. *Id.* At this time, Dr. Floch's office informed Social Security Administration ("SSA") personnel by phone that Plaintiff required intensive physical therapy, but with proper treatment and follow-up, there was "no reason that [Plaintiff] would not be capable of at least a desk job one year post injury." *Id.* 92.

On January 8, 2003, Plaintiff was examined by a physician at the Yonkers Community Health Center. *Id.* 117. The physician noted on a form entitled "Physician's Assessment of Client's Employability" that Plaintiff complained of persistent pain in his right leg, and had sustained trauma and possible arterial damage. He opined that Plaintiff would be unable to work for three months. *Id.*

On January 17, 2003, Plaintiff was examined by Dr. Osman, of St. Joseph's Medical Center, during which time Plaintiff complained of persistent pain and swelling in his lower right leg. *Id.* 144. Dr. Osman referred Plaintiff to Dr. Francis Agbonkpolo, a specialist in pain management. *See id.* 136-37. On March 13, 2003, Dr. Agbonkpolo conducted an initial consultation of Plaintiff, at which time Plaintiff reported that he felt numbness, pain and intermittent swelling in his right leg. Plaintiff explained that his pain became aggravated from prolonged sitting or walking, and rated his pain as eight on a scale of zero to ten. He also indicated that Tylenol #3 provided relief from this pain, and Dr. Agbonkpolo recommended that Plaintiff continue taking Tylenol #3, along with Neurotin. Dr. Agbonkpolo also discussed using

a "sympathetic block" to ease the pain,[2] but Plaintiff was reluctant about this form of invasive

treatment. *Id.* Five days later, in a report dated March 18, 2003, Dr. Agbonkpolo noted that he

anticipated a six month treatment plan to address Plaintiff's pain using medication, as well as a

sympathetic block. *Id.* 131, 135.

On September 8, 2003, Plaintiff returned to Dr. Osman with continued complaints of

right leg pain and difficultly walking. Dr. Osman advised that Plaintiff continue with pain

management, and, on the same day, completed a "Physician's Assessment of Client's

Employability," in which he indicated, without further specifying, that Plaintiff was employable

subject to limitations. *Id.* 118, 146.

On January 6, 2004, Plaintiff was again examined by Dr. Osman, at which time he

indicated that he had stepped on broken glass a few weeks prior. *Id.* 147. Dr. Osman's

examination revealed a foreign body in Plaintiff's left heel that appeared to be glass. At this

consultation, and again on February 11, 2004, Plaintiff also complained of hair loss, for which

Dr. Osman prescribed Rogaine. *Id.* 147-48.

C.    **Other Evidence**

Plaintiff was born on March 2, 1974, and was 28 years old at the time he was stabbed in

the leg in October, 2002. *Id.* 44, 106. He has completed three years of college (*id.* 63, 155) and

last worked on a permanent basis as a counselor and supervisor for the New York State Office of

Children and Family Services, where he was responsible for the supervision of juvenile

---

[2] The Commissioner explains that a sympathetic block "involves the use of an anesthetic agent on a paravertebral trunk nerve." Def.'s Mem. of Law in Supp. of Mot. for J. on the Pleadings, Nov. 13, 2006, at 7 n.13 (citing *Dorland's Illustrated Medical Dictionary* at 207, 208 (28th ed. 1994)).

delinquents.  *Id.* 50, 58, 158, 161-62.

On October 30, 2002, Plaintiff submitted a form to SSA in which he indicated that he was unable to walk without crutches, and unable to take care of himself or provide for his family financially.  *Id.* 72-79.  Plaintiff testified at his administrative hearing before the ALJ, moreover, that because of his injury, he was no longer able to work as a counselor, a job that requires constant walking.  *Id.* 162.  He also testified that after he sustained injury to his right leg, he worked for about a month and a half in 2003 as a mail carrier and sorter for the United States Postal Service.  He explained, though, that he had to stop working because he could not perform the walking or sitting that the job required.  *Id.* 155-56.

At the time of his administrative hearing, in August, 2004, Plaintiff testified that he continued to experience sharp pain in his lower right leg.  He explained that his doctor had to take him off Tylenol III (which contains codeine) because he became addicted to it, and that medication such as ibuprofen and naproxen relieved his pain only for approximately 20 to 35 minutes.  *Id.* 156-58.  The ALJ remarked that Plaintiff alternated between sitting and standing during the hearing.  *Id.* 171.

Plaintiff further testified that he is a single parent raising a twelve year old son who has been diagnosed with an attention deficit disorder.  *Id.* 156-57, 159.  Plaintiff testified that his son is also hyperactive but when he takes his medication he is able to help with household chores such as mopping, washing the dishes, doing the laundry and tidying up the apartment.  *Id.* 165.  Plaintiff explained that he performs some light house household chores such as sweeping, cooking and grocery shopping.  *Id.* 165-66, 171.  He testified that he and his son go various

places together, such as the park, the movie theater and the library.  Plaintiff also testified that he attends church regularly and plays chess.  *Id.* 166-67, 169.

## II.     APPLICABLE LAW

### A.     Standard of Review

The scope of review in an appeal from a social security disability determination involves two levels of inquiry.  First, the court must review the Commissioner's decision to determine whether the Commissioner applied the correct legal standard when determining that the plaintiff was not disabled.  *See Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir. 1999).  Failure to apply the correct legal standard is grounds for reversal of the ruling.  *See Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir. 1984).  Second, the court must decide whether the Commissioner's decision was supported by substantial evidence.  *See Green-Younger v. Barnhart,* 335 F.3d 99, 105-06 (2d Cir. 2003).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 106 (internal quotation marks and citations omitted).  When determining whether substantial evidence supports the Commissioner's decision, the court "carefully considers the whole record, examining evidence from both sides." *Tejada,* 167 F.3d at 774 (citing *Quinones v. Chater,* 117 F.3d 29, 33 (2d Cir. 1997)).  "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted).  If the "decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its own] judgment for that of the Commissioner."  *Veino v. Barnhart,* 312 F.3d 578, 586 (2d Cir. 2002).  Moreover, the ALJ "has an obligation to develop the record in light of the non-

7

adversarial nature of the benefits proceedings, regardless of whether the claimant is represented

by counsel." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

### B. Determining Disability

The Act defines "disability" as the "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating a disability claim, regulations issued

pursuant to the Social Security Act set forth a five-step process that the Commissioner must

follow. *See* 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner will consider whether the claimant is working in "substantial

gainful activity."[3] *Id*. at § 404.1520(a)(4)(i),(b). If the claimant is engaged in "substantial

gainful activity," then the Commissioner will find that the claimant is not disabled. *Id.* Second,

the Commissioner considers the medical severity of the claimant's impairments. *Id*. at §

404.1520(a)(4)(ii). The claimant's impairment will not be deemed severe "[i]f [he] do[es] not

have any impairment or combination of impairments which significantly limits [his] physical or

mental ability to do basic work activities." *Id*. at § 404.1520(c). Third, if it is found that the

claimant's impairments are severe, the Commissioner will determine if the claimant has an

impairment that meets or equals one of the impairments presumed severe enough to render one

disabled, listed in Appendix 1 to Part 404, Subpart P of the Social Security Regulations. *See id*.

at § 404.1520(a)(4)(iii),(d). If the claimant's impairments are not on the list, the Commissioner

---

[3] "Substantial gainful activity" is defined as work that involves significant physical or mental activities that is done for pay or profit, whether or not profit is realized. *See* 20 C.F.R. 404.1572.

considers all the relevant medical and other evidence and decides the claimant's residual

functional capacity.  *See id.* at § 404.1520(e).  Then, the Commissioner proceeds to the fourth

step to determine whether the claimant can do his past relevant work.  *See id*. at §

404.1520(a)(4)(iv),(e)-(f).  Finally, if it is found that the claimant cannot do his past relevant

work, the Commissioner will consider the claimant's residual functional capacity, age, education,

and work experience to see if he can make an adjustment to other work.  *See id*. at §

404.1520(a)(4)(v),(g).

The claimant bears the burden of proof on the first four steps of this analysis.  *See*

*DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citation omitted).  If the ALJ

concludes at an early step of the analysis that the claimant is not disabled, he need not proceed

with the remaining steps.  *See Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 2000).  If the fifth step

is necessary, the burden shifts to the Commissioner to show that the claimant is capable of other

work.  *See DeChirico*, 134 F.3d at 1180 (citation omitted).

## III.   DISCUSSION

In deciding Plaintiff's case, the ALJ correctly applied the five-step sequential analysis set

forth in the regulations.  First, he found that Plaintiff had not engaged in any substantial gainful

activity since the alleged onset date of his disability on October 4, 2002.  AR 15.  Second, he

found that Plaintiff suffered from a "severe" impairment: a "right lower extremity impairment"

that resulted in more than minimal work-related limitations.  *Id.* 16.  Third, the ALJ analyzed

whether Plaintiff's impairments met or equaled the medical criteria of any of the impairments

listed in Appendix 1 to Subpart P of Part 404 of the Social Security Regulations and found that

they did not.  *Id.* 16.

Having found that Plaintiff's impairments did not meet or equal the medical criteria of any of the listed impairments, the ALJ went on to determine Plaintiff's residual functional capacity. *Id.* He found that Plaintiff cannot stand or walk for more than two hours at a time in the course of an eight hour workday due to the pain and swelling in his right leg. He also found that Plaintiff was unable to carry or lift more than ten pounds. Further, the ALJ found that Plaintiff was able sit for at least six hours in an eight-hour workday. He concluded that these limitations were commensurate with a residual functional capacity for sedentary work. *Id.* The ALJ explained that in reaching this conclusion, he found Plaintiff's allegations regarding his pain and functional limitations "not credible to the incapacitating extent alleged." *Id.* 17. In particular, the ALJ found that Plaintiff's activities, which, as Plaintiff described, included "cooking, doing light household chores, going to the movies, park, library, and religious services, and taking public transportation when needed," were not commensurate with an individual who is "totally incapacitated."[4] *Id.*

Based on this assessment of Plaintiff's residual functional capacity, the ALJ proceeded to the fourth step in the analysis to determine whether Plaintiff could perform his past relevant work as a counselor and supervisor. On this point, the ALJ found that because that job required a

---

[4] "It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks and citation omitted); *see also Stanton v. Barnhart*, No. 01 Civ. 3486, 2003 WL 1900855, at *7 (S.D.N.Y. Apr. 17, 2003) (upholding ALJ's finding that claimant's allegations regarding fatigue and pain were not credible in light of claimant's testimony that he could walk around his neighborhood, help his wife do the dishes, drive a car, run errands and visit friends). Indeed, "[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte*, 728 F.2d at 591 (citations omitted).

significant amount of standing, walking, and lifting or carrying up to 50 pounds, Plaintiff was

precluded from performing his past relevant work. *Id.* 17.

Accordingly, the ALJ proceeded to the fifth step in the evaluation – that is, a showing by

the Commissioner that "there are other jobs existing in significant numbers in the national

economy that the claimant could perform, consistent with his age, education, past work

experience, and maximum sustained work capacity." *Id.* Here, the ALJ observed that Plaintiff

was 28 years old at the time he sustained his alleged disability and 30 years old at the time of the

hearing. Thus, at all pertinent times, the ALJ found that he was a "younger individual" as

defined under the Act. *Id.* (citing 20 CFR §§ 404.1563 and 416.963). He further observed that

Plaintiff had more than a high school education, and had a history of semi-skilled to skilled work,

though he did not acquire any skills from his past work that would be transferable to other skilled

or semi-skilled occupations. The ALJ found, therefore, "[c]onsidering those factors and a

maximum sustained work capacity for sedentary work, Rule 201.28 in Table No. 1 of Appendix

2, Subpart P, Regulations No. 4 direct[ed] a conclusion that the claimant is 'not disabled.'"[5] *Id.*

Accordingly, the ALJ concluded that Plaintiff was not under a "disability" as defined in

the Social Security Act at any time through the date of the decision. *Id.* 18 (citing 20 CFR §§

---

[5] "In the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids)," which account for "the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation marks and citations omitted). The grids are generally dispositive to a determination of disability unless additional facts indicate that the guidelines fail to describe the full extent of the claimant's limitations. *Riordan v. Barnhart*, No. 06 Civ. 4773, 2007 WL 1406649, at *5 (S.D.N.Y. May 8, 2007) (citations omitted). Here, the ALJ properly made an independent judgment to discredit the extent to which Plaintiff alleged his pain was disabling. Because Plaintiff makes no other showing that he suffered from any further limitations that the regulations do not contemplate, the ALJ's reliance on the vocational guidelines was appropriate. *See id.* at *6.

404.1520(g) and 416.920(g)).  Plaintiff disputes this finding in his cross-motion for judgment but

offers no supporting evidence other than to include with his papers a number of his son's school

records, which indicate that Plaintiff's son has a number of emotional and cogitative issues.

Plaintiff explains that he is the sole caretaker for his son and asks the Court to consider his son's

difficulties in reference to the "gaps" in his medical history.  *See* Pl.'s Aff. in Opp. to Def.'s

Mot., May 18, 2007 ("Pl.'s Aff.").

Understandably, Plaintiff is concerned for his son's well-being.  His son's difficulties,

however, are not grounds for reversing the ALJ's finding that Plaintiff had no disabling

impairment during the relevant period.  Plaintiff has presented no contradictory medical opinion

regarding his ability to perform sedentary work.  While a physician at the Yonkers Community

Health Center opined in January 2003 that Plaintiff was "temporarily unemployable" for three

months (AR 117), the Act, as Plaintiff recognizes in his papers (*see* Pl.'s Aff.), defines

"disabled" as the inability to engage in substantial gainful activity for a continuous period of at

least 12 months.  *See Barnhart v. Walton*, 535 U.S. 212, 214 (2002).  Missing is any indication in

the record that Plaintiff was found to be unemployable for such a period.

Indeed, in November, 2002, Dr. Floch advised that with proper treatment, there was "no

reason" that Plaintiff would be unable to perform a desk job within 12 months of the time at

which he sustained his injury in October, 2002.  AR 92.  He also noted at this time that Plaintiff

was "doing quite well," and encouraged him to get off his crutches and walk.  *Id.* 133.  Later, in

March, 2003, Dr. Agbonkpolo anticipated that Plaintiff's condition would require only six

months of treatment. *Id.* 131. And, in September, 2003, Plaintiff's treating physician, Dr. Osman, found that Plaintiff was "employable," subject to certain limitations.[6] *Id.* 118.

It was within the ALJ's discretion, moreover, to resolve the conflict in the record and weigh the credibility of Plaintiff's testimony with respect to his allegations of pain and functional limitation. *See*, *e.g.*, *Stanton*, 2003 WL 1900855, at *7 (citing *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)). The ALJ noted that although Plaintiff alleged severe symptoms of pain, there were significant gaps in his medical treatment. AR 16. Plaintiff was not examined by a doctor for the six months between his March 13, 2003 visit with Dr. Agbonkpolo and his September 8, 2003 visit with Dr. Osman. *Id.* 16, 136-37, 146. Plaintiff was next seen in January, 2004, and again in February, 2004, at which times he complained of problems unrelated to his lower right leg, such as heel pain from stepping on glass, and hair loss. *Id.* 147-48. Dr. Osman's February 11, 2004 treatment note further indicates that Plaintiff was experiencing no acute pain at this time, and, as such, the only medication he prescribed was Rogaine to treat Plaintiff's hair loss. *Id.* 148. The ALJ also considered Plaintiff's testimony regarding his activities, which included taking his son to the park, the movie theater and the library, as well as cooking, attending church, using public transportation when necessary and "constantly going back and forth to the store." *Id.* 160-61, 165-69. This testimony and the medical evidence on the record support the ALJ's finding that Plaintiff's allegations about his pain and limitations were not entirely credible.

Accordingly, I find that there was substantial evidence supporting the ALJ's determination that Plaintiff was not disabled and could perform sedentary work.

---

[6] It should be noted that because Dr. Osman did not list any specific limitations applicable to Plaintiff, the ALJ did not afford significant weight to this particular finding. AR 16.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Your Honor grant the Commissioner's motion, deny Plaintiff's cross-motion, and dismiss the case.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days (*see* Fed. R. Civ. P. 6(a)), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Steven C. Robinson, at the United States Courthouse, 300 Quarropas Street, Room 633, White Plains, New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later appellate review of any order to judgment that will be entered by Judge Robinson. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15,16 (2d Cir. 1989) (*per curiam*); *Wesolek v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Date: May 5, 2008
White Plains, New York

Respectfully submitted,

MARK D. FOX
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation have been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

Donald Williams
624 South 8th Avenue
Second Floor
Mount Vernon, NY 10550

John E. Gura, Jr.
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, New York 10007